OSCN Found Document:BALDWIN v. SAI RIVERSIDE C, L.L.C.

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 BALDWIN v. SAI RIVERSIDE C, L.L.C.
2014 OK CIV APP 55
Case Number: 112201
Decided: 04/25/2014
Mandate Issued: 05/28/2014
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2014 OK CIV APP 55, __ P.3d __

LINDSEY R. BALDWIN, Individually, Plaintiff/Appellant,
v.
SAI RIVERSIDE C, L.L.C., d/b/a RIVERSIDE CHEVROLET, an Oklahoma Limited Liability Company; and SAI RIVERSIDE C, L.L.C., d/b/a Momentum Chevrolet, an Oklahoma Limited Liability Company, Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE DAMAN H. CANTRELL, TRIAL JUDGE

AFFIRMED

Chad M. Neuens, Brian L. Mitchell, Shella D. Sayne, NEUENS, MITCHELL, FREESE, P.L.L.C., Tulsa, Oklahoma, for Plaintiff/Appellant,
W. Kirk Turner, Keith Andrew Wilkes, NEWTON, O'CONNOR, TURNER & KETCHUM, P.C., Tulsa, Oklahoma, for Defendants/Appellees.

BRIAN JACK GOREE, Judge:

¶1 Plaintiff/Appellant, Lindsey Baldwin, seeks review of the trial court's order granting summary judgment to Defendants/Appellees, SAI Momentum Chevrolet, and SAI Riverside C, L.L.C., d/b/a Riverside Chevrolet (Dealership). Melvin Mitchell (Employee) worked at Dealership and injured Baldwin when he struck her on the back of the knee as a prank. Baldwin sued Dealership for the negligence of Employee. We affirm because the material facts are undisputed and lead to the single inference that Employee was acting outside the scope of his employment with Dealership when he injured Baldwin by a prank that was entirely personal and in no way connected with his assigned work.

¶2 Baldwin's petition alleged she accompanied an out-of-state friend to Dealership's premises to visit her then-husband, Doug Baldwin, who was the new car manager for Dealership. While the three were conversing, Employee surprised Baldwin by kicking the back of Baldwin's knee with his knee, causing tears in Baldwin's anterior cruciate ligament and medial meniscus. The injuries required surgery to repair them.

¶3 Dealership answered and denied liability. It then moved for summary judgment, arguing it was not liable for Employee's act under the theory of respondeat superior because the undisputed facts showed Employee was not performing any part of his job duties for Dealership when he struck and injured Baldwin. Dealership cited Baldwin's deposition testimony:

Q Was there anything about what [Employee] did in intentionally hitting you that - have anything to do with his job as a car salesperson at the dealership?
A Well, it wasn't in his job description.
...
Well, he was working that day, but that wasn't --
...
Q - we understand that. But in actually performing a job duty or anything like that, nothing?
A No.

¶4 In response, Baldwin asserted Employee was a sales manager with a reputation for pulling pranks and hitting people in the back of knees while he was at work. She asserted Dealership did not speak with Employee regarding his actions on the day of the incident, but it involuntarily terminated his employment on January 20, 2009 for violation of rules, insubordination, and unsatisfactory performance. Baldwin argued that where there is uncertainty regarding the degree to which the employee deviated from his job duties, the issue must be sent to the jury, citing Sheffer v. Carolina Forge Co., L.L.C., 2013 OK 48, ¶19, 306 P.3d 544. She also argued Dealership ratified Employee's actions by failing to curb his negligent interactions, failing to document his negligent interaction with her, and continuing his employment for three months after the incident.

¶5 The trial court granted the motion for summary judgment, stating, "the facts here do not rise to the level required under caselaw to amount to a ratification of specific behavior clearly outside the scope of employment." Baldwin appeals without appellate briefs in conformance with the procedures for the appellate accelerated docket, Okla. Sup. Ct. R. 1.36, 12 O.S. Supp. 2013, Ch. 15, App. 1. She contends the trial court erred in finding (1) Employee clearly acted outside the scope of employment when he injured her, and (2) Dealership did not ratify Employee's conduct.

¶6 Because a grant of summary judgment involves purely legal determinations, we will review the trial court's decision under a de novo standard. Carmichael v. Beller, 1996 OK 48, ¶2, 914 P.2d 1051, 1053. Summary judgment is appropriate only when there is no substantial controversy as to any material fact and one of the parties is entitled to judgment as a matter of law. 12 O.S.2011, Ch. 2, App. 1, Rule 13.

¶7 In order for an employer to be responsible for the tort of an employee under the theory of respondeat superior, the tortious act must be committed in the course of the employment and within the scope of the employee's authority. Sheffer v. Carolina Forge Co., L.L.C., 2013 OK 48, ¶18, 306 P.3d 544, 550. An employee acts within the scope of employment if engaged in work assigned, doing that which is proper, necessary and usual to accomplish the work assigned, or doing that which is customary within the particular trade or business. Id. Generally, assault on a third party is not within the scope of an employee's authority. Baker v. Saint Francis Hospital, 2005 OK 36, ¶10, 126 P.3d 602, 605. The exception is when the act is incidental to and done in furtherance of the business of the employer, even though it was done mistakenly, ill-advisedly, or even maliciously. Id.

¶8 Usually the question of whether an employee has acted within the course and scope of employment at any given time is a question for the trier of fact. Sheffer, 2013 OK 48 at ¶19. However, where only one reasonable conclusion can be drawn from the facts, the issue of whether an employee was within the scope of employment may be decided by the court. Id. For example, in N.H. v. Presbyterian Church (U.S.A.), 1999 OK 88, ¶17, 998 P.2d 592, 599, the Court held that a minister's sexual abuse of children was outside the scope of employment as a matter of law.

¶9 In Rausch v. Pocatello Lumber Co., Inc., 135 Idaho 80, 84, 14 P.3d 1074, 1078 (Ct. App. 2000), the Idaho Court of Appeals canvassed the law of the few states that had addressed whether pranks or horseplay at the workplace fell within the scope of the prankster's employment. It observed a uniformity of holdings that if the prank itself is a part of the employee's duties, even if ill-advised, then the act is within the scope; but if the prank is a purely personal act for personal motives or whims, then it could in no way be said to be serving the employer. The Court concluded that when an employee pulled a chair out from underneath a visitor, the resulting injury was done for a purely personal motive and did not further any purpose or objective of employer. Id. at 1079.

¶10 The Court in Hollinger v. Stormont Hospital and Training School for Nurses, 578 P.2d 1121, 1124, (Ct. App. Kan. 1978), reached the same conclusion as the Rausch Court when it considered whether a prankster was acting in the scope of his employment. An employee injured a visitor when he was teasing her and the visitor jerked in such a way that she was injured. The Court stated, "His act could only have been for a purpose personal to him." Id. at 1130.

¶11 The undisputed material facts in the present case lead to the single inference that Employee was teasing his boss's wife for fun. The record shows the knee-kick was an action motivated by, and indulging, his personal gratification at performing practical jokes. The record contains no evidence Employee was engaged in the work assigned or was acting out in an ill-advised manner so as to engender a light-hearted and informal relationship with a customer in order to facilitate a potential sale. Plaintiff was not a customer. Employee was not doing what was proper, necessary, or usual in order to accomplish the assigned work. He was not doing what was customary within the trade. Accordingly, the trial court did not err in ruling as a matter of law that the knee-kick was clearly outside the scope of employment.

¶12 Ratification is defined as the giving of sanction and validity to something done by another. Shephard v. CompSource Oklahoma, 2009 OK 25, ¶14, 209 P.3d 288, 293. An example of ratification is when an employer acknowledges the alleged tort-feasor employee acted within the scope of employment. Id. The record in this case contains no evidence from which the trier of fact could find that Dealership acknowledged or admitted that Employee acted within the scope of his employment when he knee-kicked Baldwin. The trial court did not err in ruling Baldwin failed to establish a contested issue of fact as to ratification.

¶13 For the foregoing reasons, the trial court's order is AFFIRMED.

BELL, P.J., and MITCHELL, J., concur.






 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Supreme Court Cases Cite
Name
Level 1999 OK 88, 998 P.2d 592, 70 OBJ 3260, N.H. v. Presbyterian Church (U.S.A.)
Discussed 2005 OK 36, 126 P.3d 602, BAKER v. SAINT FRANCIS HOSPITAL
Discussed 1996 OK 48, 914 P.2d 1051, 67 OBJ 1173, Carmichael v. Beller
Discussed 2009 OK 25, 209 P.3d 288, SHEPHARD v. COMPSOURCE OKLAHOMA
Discussed 2013 OK 48, 306 P.3d 544, SHEFFER v. CAROLINA FORGE COMPANY, L.L.C.
Discussed at Length